## UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| **DMW MARINE, LLC,** | : | |
| Debtor. | : | Bky. No. 11-13953 ELF |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |
| | : | |
| **MICHAEL H. KALINER, Trustee** | : | |
| of the Estate of DMW Marine, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **DEBORAH D. KLEIN,** | : | Adv. No. 13-0291 |
| **DRINKER BIDDLE & REATH, LLP, and** | : | |
| **MARK S. PEARLSTEIN,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

# O R D E R

AND NOW, upon consideration of the Motion for Summary Judgment ("the Motion")

(Doc. # 61) filed by Defendant Mark S. Pearlstein ("Pearlstein"), the response thereto (Doc. # 63)

and Pearlstein's Sur-Reply (Doc. # 67), it is hereby **ORDERED** that the Motion is **DENIED**.[1]


Date: **March 10, 2014**            ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
                                    **ERIC L. FRANK**
                                    **CHIEF U.S. BANKRUPTCY JUDGE**

# E N D N O T E

1.      Pearlstein's first asserted ground for the entry of summary judgment is based on the

doctrine of res judicata.  Pearlstein contends that the District Court's denial of the Trustee's

Motion for Disgorgement of Legal Fees ("the Motion to Disgorge") precludes the Trustee's

preference claim under 11 U.S.C. §547(b).

        In the briefs, the parties addressed the issue whether the Trustee's preference action is a

subsequent suit based on the same claim as the Trustee's Motion to Disgorge filed in the District

Court.  Because I deny Pearlstein's affirmative defense based on a slightly different, although

related, ground, I need not decide the precise issue raised by the parties.

        The doctrine of res judicata, or the more modern term, claim preclusion, bars subsequent

litigation if there has been (1) a final judgment on the merits in a prior suit involving (2) the same

parties or their privies and (3) a subsequent suit based on the same cause of action.  E.g.,

Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991); accord Sims v. Viacom, Inc.,

2013 WL 6018840, at *2 (3d Cir. Nov. 14, 2013) (nonprecedential).  The doctrine also "gives

dispositive effect to a prior judgment if a particular issue, although not litigated, **could have**

**been raised** in the earlier proceeding."  Corestates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187,

194 (3d Cir. 1999) (quoting Board of Trustees of Trucking Employees of N.J.  Welfare Fund,

Inc.-Pension Fund v. Centra, 983 F.2d 495, 504 (3d Cir. 1992)) (emphasis in original).  The rule

against "splitting claims" is designed to foster economy, and "avoid piecemeal litigation of

claims arising from the same events."  General Elec. Co. v. Deutz AG, 270 F.3d 144, 157-58 (3d

Cir. 2001); accord Sims, 2013 WL 6018840, at *2.

Because of its potential to foreclose litigation of claims or defenses that have not been previously raised, claim preclusion should "be invoked only after careful inquiry."  Brown v. Felsen, 442 U.S. 127, 132 (1979).  Application of the doctrine is circumscribed if procedural or jurisdictional limitations impose a barrier to a plaintiff from raising an particular issue or legal theory in the first proceeding.  For instance, claim preclusion will not apply to forestall a successive action on the same cause of action if all the elements of a claim had not yet occurred prior to the filing of the first action, i.e., the claim did not exist at the time of the first action, Allegheny Int'l v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1430 (3d Cir. 1994) (citing Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 328 (1955)), or if the first court did not have subject matter jurisdiction over the claim, Restatement (Second) of Judgments §26(1)(c)); see also Jones v. Holvey, 29 F.3d 828, 831-32 (3d Cir. 1994), or if the defendant acquiesces to splitting the claims, Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1072 (3d Cir. 1990).

Here, the District Court referred jurisdiction over the preference action to the bankruptcy court, which inhibited the Trustee's ability to joining his preference claim and his Motion to Disgorge in a single proceeding in the District Court.

When Congress conferred subject matter jurisdiction in bankruptcy cases to the District Courts pursuant to 28 U.S.C. 1334(b), it also granted the District Court the discretion to refer bankruptcy cases and proceedings to the bankruptcy courts under 28 U.S.C. §157(a).  Pursuant to the Standing Orders of the District Court dated July 25, 1984 and November 8, 1990, the District Court has referred all cases and proceedings under Title 11 to the bankruptcy courts for this district.  This referral of jurisdiction encompassed core proceedings such as adversary proceedings brought under 11 U.S.C. §547 and 550.  Therefore, when DMW filed its chapter 11

-3-

bankruptcy case, by operation of 28 U.S.C. §157(a) and the Standing Orders, the District Court

had relinquished jurisdiction to entertain the preference action. While it was certainly possible

for the Trustee to have filed the preference action in this court and then requested that the district

court withdraw the reference pursuant to 28 U.S.C. §157(d) so that it could be heard with the

Motion to Disgorge,, the Court of Appeals has advised that the mere possibility that the first

court would exercise jurisdiction is an insufficient basis for the application of claim preclusion,

rather "there must also be some likelihood that it would have exercised that jurisdiction to hear

that claim." Jones, 29 F.3d at 831.  Based on my experience, I conclude that there was little

likelihood that the District Court would have withdrawn the reference of the (then unfiled)

preference action so that it could be heard with the Motion to Disgorge.  Therefore, for purposes

of the claim preclusion doctrine, the Trustee could not have brought the preference action in the

prior District Court action and therefore, is not precluded in this adversary proceeding.


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Pearlstein's second asserted ground for the entry of summary judgment is based on the

affirmative defenses of "ordinary course" payment and "contemporaneous exchange for new

value." See 11 U.S.C. §547(c)(1) and (2).  In evaluating this argument, because the Trustee does

not appear to take issue with it, I will consider the factual content set forth in the Motion, even

though it was not verified as required by the plain language of Fed. R. Civ. P. 56(c)(1)(A).  See

11 Moore's Federal Practice §56.91[2] (3d ed. 2012).   However, the factual matter presented

does not establish the absence of a disputed issue of material fact as required by Rule 56(a).  The

factual record is simply inadequate at this time to enter summary judgment in favor of Pearlstein.

The Pearlstein-Receiver fee agreement is not in the record.  The modest account statement provided in the body of the Motion does not disclose the dates that Pearlstein issued his monthly bills, the dates that the payment checks were issued, the dates that the Receiver actually mailed the checks (or the dates Pearlstein received them), or the dates that the checks cleared the Receiver's account.  Nor is the account statement even fully intelligible.  For example, the account statement indicates that Pearlstein issued his bills at the end of the month.  Yet, it also states that in April 2010, Pearlstein billed $5,951.00 and was paid $3,000.00 on April 7, 2010.  If the bill was dated in the end of April, how could the Receiver have paid the bill on April 7th?  In short, the account statement is an inadequate foundation for establishing that no material facts are in dispute.

More specifically, without a copy of the Pearlstein-Receiver fee agreement and considering that, according to the account statement, the Receiver continually owed some unpaid balance to Pearlstein after the April 2010 payment, it remains unclear whether Pearlstein and the Receiver intended the payments within the preference period be a contemporaneous exchange for new value, as opposed to a payment on the oldest, unpaid portion of Pearstein's bill.

As for the "ordinary course" defense, without knowing when the billed services were provided, the exact dates of the monthly bills were issued by Pearlstein, the dates that the check were issued, mailed and cleared the Receiver's account, it is difficult to compare the parties' pre-preference period and post-preference period behavior.  See generally In re Universal Marketing, Inc., 481 B.R. 318 (Bankr. E.D. Pa. 2012).  Furthermore, Pearlstein's own account record shows that the unpaid balance of his bill reached its highest level by far during the preference period before being paid back down, in large part, by a substantial payment one (1) day before the

bankruptcy case was filed.  From carrying the relatively low balance of $2,495.00 as of mid-December 2010, the outstanding balance reached $15,420.00 during the preference period (i.e., in mid-April 2011), an amount that was more than double the account balance of all but two (2) months of the pre-preference period.  There are too many unanswered questions and uncertainties to permit the court to conclude that there are no factual issues regarding this defense.

As the moving party, it is Pearlstein's burden to demonstrate that there are no disputed issues of material fact.  E.g., U.S. v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011).  For all the reasons stated above, he has failed to meet that burden.